UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, : | |
| : | |
| vs. : | NO. 1:13-CR-259 |
| : | |
| DANIEL THOMAS CURRAN, : | |
| Defendant. : | |

*M E M O R A N D U M*

*I.   Introduction*

We are considering a pre-trial motion to suppress filed by Defendant Daniel Thomas Curran.  (Doc. 40).  Defendant was indicted on November 20, 2013, for producing child pornography in violation of 18 U.S.C. §§ 2251(a), 2251(e) (Count 1), and possessing child pornography in violation of 18 U.S.C. § 2252A(a)(5(B) (Count 2).  In this motion, Defendant asks us to suppress evidence seized from his storage unit.  A hearing on the matter was held on April 8, 2014.  For the reasons that follow, we will deny the motion.

*II.   Background*

   *A. Events Preceding the Search*

On September 24, 2013, the Northern York County Regional Police Department (NYCRPD) received a report of suspected child abuse from an individual we will refer to as R.S.  (Doc. 46 at 1; Doc. 40-2 at 2).  R.S. told police that he had

discovered his nine-year-old son, referred to herein as C.S., in his roommate's bed without a shirt. (Doc. 46 at 2; Doc. 40-2 at 2). The roommate, who is Defendant Daniel Curran, had been living with R.S. and his two children for approximately two months. (Doc. 46, Ex. 1). R.S. reported that Defendant moved out of the residence that evening. (Doc. 46 at 2; Doc. 40-2 at 2).

The following morning, police received a complaint from an employee at the West Manchester Mall who reported that Defendant had shown him nude pictures of children on his cell phone. (Doc. 46 at 2; Doc. 40-2 at 3). Defendant reportedly told the employee that the children in the pictures were R.S.'s, that he had sex with both of them, and that the night before, he had almost been caught by their father. (Doc. 46, Ex. 2). This report prompted Detective Hine of the NYCRPD to obtain a search warrant for Defendant's phone. Hine met Defendant in a retail store parking lot and retrieved the phone. (Doc. 46 at 2; Doc. 40-2 at 3). During this meeting, Defendant voluntarily gave Hine an SD card and a video camera that he had purportedly been using to surreptitiously record events in C.S.'s bedroom. (Doc. 46 at 3; Doc. 40-2 at 5).[1] Defendant explained that he suspected R.S. was sexually abusing C.S., and intended to catch him on video. (Doc. 46 at 2; Doc. 40-2 at 5).

Later on September 25, R.S. reported to Detective Hine that several items were missing from his home, including: a necklace, bracelet, ring, C.S.'s Nintendo DS,

---

1. Detective Hine applied for a search warrant to review the contents of the camera and the SD card on October 4, 2013. Two photographs of C.S. were located; in one, the boy is nude, and in the other, he is wearing only underpants. (Doc. 46 at 3).

photo albums, a collection of knives, throwing stars, nunchucks, two bayonets, old bullets, and R.S.'s old cell phone. (Doc. 46, Ex. 5; Doc. 40-2 at 7). R.S. also told Hine that Defendant had a storage unit but he was unsure of the location. (Doc. 46, Ex. 5).

On September 26, Hine obtained a warrant to search Defendant's vehicle for the missing items. Detectives Hine and Baker conducted the search on September 27, but the only item found was a diagram of R.S.'s house. (Doc. 46 at 3; Doc. 40-2 at 7-8). At the conclusion of the search, Hine asked Defendant if he had a storage unit, and Defendant stated that he did not. (Doc. 46 at 3; Doc. 40-2 at 8). After the officers and Defendant parted ways, Detective Baker called Capital Self Storage in East York and was advised that Defendant did have a storage unit, and that he was currently at the unit. (Doc. 46 at 3; Doc. 40-2 at 9).

Hine and Baker proceeded immediately to the storage facility. Upon arrival, they encountered Defendant walking toward the exit. (Doc. 46 at 3; Doc. 40-2 at 9). He was looking over his shoulder toward the fence at the back end of the storage facility. (Doc. 46 at 3; Doc. 40-2 at 9). Officer Hine approached Defendant and placed him in investigative detention. (Def. Ex. 100 at 23; Doc. 46, Ex. 5). Hine observed that Defendant's vehicle was parked in an adjacent lot.[2] (Def. Ex. 100 at 23; Doc. 46, Ex. 5). Hine saw three bags[3] lying on the other side of the fence, in the same general area

---

2. Defendant testified that he did not drive his vehicle into the storage facility because it was low on fuel. (Tr. at 58).

3. A zippered duffel bag, a Walmart tote bag, and a wheeled computer bag.

where Defendant's vehicle was parked.  (Def. Ex. 100 at 23; Doc. 46, Ex. 5).  Defendant told Hine the bags were his, and that he threw them over the fence.[4]  (Def. Ex. 100 at 23; Doc. 46, Ex. 5).  At this point, Hine read Defendant his *Miranda* rights, and placed him in the back of the patrol car.[5]  (Def. Ex. 100 at 23; Doc. 46, Ex. 5).  Hine then inspected the bags.  The Walmart tote bag was spilled open, and Hine could see DVD's, a knife, film canisters, and a child's toy.  (Def. Ex. 100 at 23; Doc. 46, Ex. 5).  Hine opened one of the zipped bags and found a cell phone inside.  Defendant confirmed that the cell phone belonged to R.S.  (Def. Ex. 100 at 23; Doc. 46, Ex. 5).  The detectives then briefly inspected the contents of the bags, loaded them into the police car, and transported them, along with Defendant, to the police station.  (Def. Ex. 100 at 23, 46).

Once the bags had been inventoried at the police station, Hine applied for a search warrant to examine the computer and flash drives found therein.  (Doc. 46, Ex. 8).  This search uncovered numerous images and videos of child pornography, depicting

---

4. Defendant testified that he opted to throw the bags over the fence rather than carry them because he was a smoker, and the weight of the bags made breathing difficult.  (Tr. at 62).

5. Detective Hine's testimony regarding this order of events was somewhat inconsistent with his police report and probable cause affidavit.  On the stand, Hine recalled that Defendant was placed in the back of the patrol car before the detectives saw the bags, and that Defendant initially denied the bags were his.  The police report and probable cause affidavit both state that Defendant claimed ownership of the bags at the outset of the encounter.  The order of events were certainly more clear in the detective's mind at the time of writing the reports, so we will accept the facts as laid out therein.  (See Def. Ex. 100 at 23; Doc. 46, Ex. 5).  Because these are minor details that are ultimately immaterial to our analysis, we do not find that this inconsistency weighs heavily on Hine's credibility, and we will credit the remainder of his testimony.

Defendant and C.S. (Doc. 46 at 4-5). Hine also obtained a warrant to search the storage unit for stolen property. (Doc. 46, Ex. 5). During this search, the police found several of R.S.'s belongings, and more items relating to child pornography. (Def. Ex. 100, at 24). A second warrant was obtained specifically to search the unit for child pornography. (Doc. 46, Ex. 7). In total, nearly 400,000 images of child pornography were found in Defendant's possession. (Doc. 46 at 6). Defendant was indicted for production and possession of child pornography on November 20, 2013. On March 14, 2014, Defendant filed the instant motion to suppress the evidence discovered in the searches of the bags and storage unit.

III.     Discussion

     *A. Defendant Did Not Abandon the Bags*

The government argues that Defendant lacks a reasonable expectation of privacy in the bags because he abandoned them by throwing them over the fence. Conversely, Defendant contends that he threw the bags over the fence with the intention of retrieving them and loading them into his car. The Fourth Amendment protects individuals from unreasonable searches and seizures. U.S.CONST. amend. IV. However, "[a] warrantless search or seizure of property that has been 'abandoned' does not violate the fourth amendment." United States v. Thomas, 864 F.2d 843, 845 (D.C. Cir. 1989). Individuals who abandon their property relinquish their expectation of privacy in the abandoned object. Id. To determine whether property has been abandoned, we examine the facts from an objective viewpoint. United States v. Thomas, 423 F. App'x

5

199, 203-204 (3d Cir. 2011). An individual's intent to abandon property must be established by "clear and unequivocal evidence." Id.

Although Defendant obviously endeavored to hide the bags from police, his actions do not manifest clear and unequivocal evidence of intent to abandon the bags. This case is unlike other abandonment cases in which the defendant drops a bag in a location and leaves the vicinity, or claims the item does not belong to him/her. See, e.g., Abel v. United States, 362 U.S. 217, 241 (1960) (items found in trash can of hotel room had been abandoned by the defendant); Thomas, 864 F.2d at 846 (defendant abandoned gym bag by leaving it on the second floor of an apartment building and then leaving the premises); United States v. Fulani, 368 F.3d 351, 354 (3d Cir. 2004) (defendant abandoned bag by claiming that it did not belong to him); United States v. Perkins, 871 F. Supp. 801 (M.D. Pa. 1995) (defendant abandoned bag by leaving it on a bus and failing to return to claim it). Regardless of Defendant's purported reason for tossing the bags over the fence, it is clear that he planned to retrieve the bags and take them to his vehicle, but was apprehended by the police in the process. Thus, the bags were not abandoned.

*B. The Search and Seizure of the Bags Was Lawful*

When Defendant threw the bags over the fence, a few items spilled out onto the ground. (Def. Ex. 102). Detective Hine testified, consistent with his report (Def.

Ex. 100 at 23), that he observed a knife, DVD's, and a child's toy in plain view.[6]  (Def. Ex. 102).  These items matched the description of the items that R.S. reported stolen.  Accordingly, we agree with the Government that the seizure was permissible because it was a plain view seizure of stolen property.  "It is well established that in certain circumstances the police may seize evidence in plain view, without a warrant."  Coolidge v. New Hamphire, 403 U.S. 443, 465 (1971).  The Supreme Court has set forth three requirements for valid seizures of evidence in plain view:  (1) the police must not have violated the Fourth Amendment in arriving at the place where the evidence could be viewed; (2) the incriminating nature of the evidence must be readily apparent; and (3) the officer must have "a lawful right of access to the object itself."  Horton v. California, 496 U.S. 128, 136-37 (1990).  Here, the first requirement is satisfied because the evidence was located in a public place–the grassy area between the storage unity facility and the adjacent parking lot.  "[O]bjects such as weapons or contraband found in a public place may be seized by the police without a warrant."  Payton v. New York, 445 U.S. 573, 586-87 (1980).  Second, Detective Hine immediately recognized the items as matching the description of the items that R.S. reported stolen, so the incriminating nature of the evidence was readily apparent.  Last, because the bags were lying in the grass in a public space, Hine had lawful access to the evidence itself.  Thus, the warrantless seizure of the bags was permissible.

---

6. Although the child's toy is not visible in the photograph, (Def. Ex. 102), we credit the Detective's testimony that he could see the toy.

Hine's cursory search through the bags at the scene was also lawful. The Third Circuit has held that "when a valid arrest has been made in a public place, which requires that the arrested person be transported from the scene, police may search any luggage that the person has in his possession at the time of the arrest, and which must accompany him to the police station, prior to transporting it." United States v. Matthews, 532 F. App'x 211, 225-26 (3d Cir. 2013), cert. denied, 134 S. Ct. 1327 (U.S. 2014). This type of search is justified by a concern for officer safety, and is valid regardless of whether the officer believes the bags contain contraband. Id. "Dangerous instrumentalities–such as razor blades, bombs, or weapons–can be concealed in innocent-looking articles taken from the arrestee's possession." Id. (internal quotation omitted).

Here, the detectives had probable cause to believe that Defendant had committed the crime of theft, and thus, the arrest was lawful.[7] See Devenpeck v. Alford, 543 U.S. 146, 152 (2004) (warrantless arrests are reasonable under the Fourth Amendment as long as there is "probable cause to believe that a criminal offense has been or is being committed."). Once Defendant had been arrested, the bags had to be transported to the police station. The detectives could not leave the bags at the storage

---

7. According to R.S., Defendant was the only other individual who had access to the items that were stolen. Based on this information, the detectives had sufficient probable cause to obtain a warrant to search Defendant's vehicle. Although that search was fruitless, the detectives soon learned that Defendant had lied about having a storage unit. Thus, when they apprehended Defendant removing bags from said storage unit, they had probable cause to believe that Defendant had committed the crime of theft, and was attempting to hide the stolen items.

facility because they might have been thrown out, stolen, or otherwise destroyed. The only prudent choice was to transport the items to the police station. "Simply put, '[l]aw enforcement officers should not be precluded from conducting a[ ] . . . search when they take a potential Trojan horse into their [possession].'" Matthews, 352 F. App'x at 224 (internal quotation omitted). It is particularly relevant in this case that several of the items reported stolen were weapons, such as knives, bayonets, throwing stars, and nunchucks. The detectives' cursory inspection of the bags was therefore permissible. Because we find that the search was lawful, we will deny Defendant's motion to suppress.[8]

IV.     *Conclusion*

For the reasons above, Defendant's motion (Doc. 40) will be denied. We will issue an appropriate order.

/s/William W. Caldwell
William W. Caldwell
United States District Judge

---

8. Defendant submitted an additional brief arguing that the remainder of the evidence seized from the search of the storage unit must be suppressed pursuant to the "Fruit of the Poisonous Tree" doctrine. Because we find that the search of the bags was lawful, we will not address this argument.