UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | No. 1: 13-CR-259 |
| | : | |
| v. | : | (Judge William W. Caldwell) |
| | : | |
| DANIEL THOMAS CURRAN JR. | : | (FILED ELECTRONICALLY) |

## GOVERNMENT'S BRIEF OPPOSING DEFENDANT'S MOTION UNDER §2255 TO VACATE, SET ASIDE OR CORRECT SENTENCE

**AND NOW,** comes the United States through Meredith A. Taylor, Assistant U.S. Attorney, and files this Brief Opposing Defendant's Motion Under §2255 to Vacate, Set Aside or Correct Sentence:

### PROCEDURAL HISTORY

**A. Procedural History**

On September 10, 2014, a federal grand jury sitting in Harrisburg, PA charged Daniel Thomas Curran, Jr. in a three-count superseding indictment with Production of Child Pornography in violation of 18 U.S.C. § 2251(a)(Count 1), Receipt of Child Pornography in violation of Title 18, United States Code, Section 2252A(a)(2)(Count 2) and Possession of Child Pornography in violation of Title 18, United States Code, Section 2252A(a)(5)(B) (Count 3).

On November 18, 2014, pursuant to a written plea agreement, Curran pleaded guilty to all counts of the Superseding Indictment. This plea agreement

was a conditional agreement that reserved Curran's right pursuant to Fed. R. Crim. P. 11(a)(2) to appeal the District Court's previous decision denying Curran's motion to suppress evidence.

The United States Probation Office prepared a Pre-Sentence Investigation Report and determined Curran has a Criminal History Category I and a total offense level of 43. *See* PSR ¶86. Therefore, he would face a sentence of life in prison. However, because the combined statutory maximum for the charges Curran pled to is a term of imprisonment of 70 years, the advisory guidelines call for a sentence of 840 months. *See* PSR ¶86. The parties submitted sentencing memoranda in advance of the sentencing hearing for the Court's review.

On June 4, 2015, this Honorable Court sentenced Curran to the statutory maximum on each count to be served consecutively, a total of 70 years in prison. Curran filed a timely notice of appeal on June 17, 2015 and the Third Circuit Court of Appeals entered their final judgment on February 1, 2016, affirming this Court's decisions as to Curran's sentence and conviction. Therefore, the one year statute of limitations for the filing of a motion pursuant to 28 Section 2255 began running 90 days after the entry of the Court of Appeals judgment or May 1, 2016. Therefore, Curran's filing of this motion on April 21, 2017 was within the expiration of the statute of limitations of May 1, 2017.

B. Statement of the Facts

a. The Offense Conduct

Curran sexually abused a minor boy, 9 year old C.S., for two months while Curran was living with the boy's family. PSR ¶ 6-17. Knowing the child's age, Curran anally penetrated C.S. with objects, manually and orally stimulated C.S., and recorded this abuse. PSR ¶ 6-17.

In August and September, 2013, Curran lived with R.S. in York County, Pennsylvania along with R.S.' two young children. PSR ¶ 6. In September 2013, law enforcement received three separate reports of suspicious activities involving Curran, including a report from R.S. that he found his 9 year old son, C.S., in Curran's bed. PSR ¶ 6-7.

On September 27, 2013, law enforcement learned Curran had a storage unit at Capital Self Storage in East York and observed Curran leaving the storage facility on foot. PSR ¶ 11. Detectives Mark Baker and Michael Hine of the Northern York County Regional Police Department (NYCRPD) observed Curran's vehicle in an adjacent parking lot and located three bags lying on the ground at the base of a fence surrounding the storage unit. PSR ¶ 11.

A laptop computer and 62 flash drives were located in the bags. PSR ¶ 12. Detective Baker applied for and received a search warrant to examine the computer

and the flash drives on this same day, September 27, 2013. Detective Hine also obtained a search warrant for Curran's storage unit that day.

The FBI conducted a forensic review of the images on the computer and a number of the flash drives and determined they contained 3.9 million images. They identified more than 40,000 images of child pornography and then stopped counting due to the voluminous nature of the evidence. Some of the images on these devices are of children as young as toddlers, some show penetration of the genitals of children under the age of 12 years old, some as young as toddlers, by adults and many depict sexually explicit conduct, including vaginal and anal penetration, oral to penile contact, digital penetration, bondage of children, and the lascivious exhibition of the genital area. PSR ¶ 13.

There are approximately a dozen videos showing Curran sexually assaulting 9 year old C.S., by anal penetration with objects and oral and manual stimulation. PSR ¶15. These videos include audio of Curran's voice and show Curran's face as well. PSR ¶15.

### b. The Motion to Suppress and Evidentiary Hearing

Prior to his plea, Curran challenged the search and seizure of his bags at the storage facility via a motion to suppress. After briefing and an evidentiary hearing, the District Court denied the motion. The following facts are relevant to

4

any review of that denial.

On September 24, 2013, after receiving a report that Curran was displaying pictures of naked children on his cellular telephone, Detective Michael Hine obtained a search warrant for Curran's cellular telephone.

On September 25, 2013, R.S. reported to NYCRPD that several items were missing from his home, including personal items belonging to C.S. R.S. also advised that Curran had a storage unit in York.

On September 26, 2013, Detective Hine obtained a search warrant for Curran's vehicle to search for the stolen items. The next day, he and Detective Baker met with Curran to execute the warrant. None of the stolen items were located in Curran's vehicle. At that time, Detective Hine asked Curran if he had a storage unit and Curran lied and said he did not.

Within minutes after Curran had lied about having a storage unit, Detective Baker of NYCRPD called Capital Self Storage in East York and confirmed Curran rented a storage unit at that facility. Detective Baker was informed Curran was currently at the storage facility. Detective Hine met Curran as he was exiting the storage facility on foot. He was leaving the storage unit empty-handed and was looking back towards a fence while speaking with the police. Detective Hine detained Curran in the back of his car and provided him with his *Miranda*

warnings.

Detectives Baker and Hine observed Curran's vehicle in an adjacent parking lot and they drove over to it. Detective Hine also located three bags lying on the ground near the fence surrounding the storage unit. PSR ¶ 11. At least one of the bags was open and some of its contents spilled out onto the grass. The detectives could see what looked like a knife, DVDs and a child's toy lying on the grass. The items they could see were consistent with those that R.S. had reported stolen. They photographed the bags prior to touching or moving any of the evidence. Detective Hine asked Curran several times if the bags belonged to him, and each time Curran said no. Detective Hine did a brief inspection of the bags for officer safety before placing them in his patrol car and did see a cellular telephone in one of the bags. Once Detective Hine confronted Curran with the cell phone, he admitted he had taken the cell phone from R.S. App. 50-51. Curran eventually admitted the bags were his. PSR ¶ 11. The bags were seized as evidence and taken to the police station to be inventoried. Detective Hine testified at the suppression hearing that he would have arrested Curran for theft whether he had found the cell phone or not.

### c. The Sentencing Hearing

After Curran pleaded guilty, the district court held a sentencing hearing on

June 4, 2015. The U.S. Probation Office determined that under the Sentencing Guidelines Curran's Total Offense Level was a 45, which reverted to 43 as it was the upper limit, and his Criminal History Category was a I. PSR ¶57, 60. Therefore, the advisory guidelines called for a sentence of life imprisonment in this case but the statutory maximum available here was 840 months. PSR ¶86.

During the hearing, the defense objected to a proposed obstruction of justice enhancement and the district court sustained that objection. All parties acknowledged this decision had no effect on the advisory guidelines range. The defendant requested a downward variance, arguing that 70 years was greater than necessary to achieve the purposes set forth in 18 U.S.C. §3553(a). The defense argued that Curran was "remorseful" for what he did to C.S. Even Curran himself did not support that statement. When given a chance to speak to the district court, all Curran said was that the "[d]eath penalty will still do it for me."

After hearing argument from the government, the court imposed sentence. The court discussed its consideration of the factors under 18 U.S.C. §3553(a). App. 263-65. The court noted "this is one of the most disturbing cases I think I've ever had." The court commented "[w]hat was done to the victim in this case is disgusting and had to be done by a person who is depraved." The court expressed its consideration of the need for the sentence to protect the public from further

7

crimes by Curran, a valid 3553(a) factor, in stating "I'm concerned about if he [Curran] would do it to this child, I think he would do it to another child if he had an opportunity to do that."  The court also noted it was considering Curran's "possession of an unbelievable quantity of sickening pornography involving children as young as toddlers, in my mind, reflects a person who may continue to pose a threat to children and is one who must be deterred by removal from society and from the community."

In considering Curran's claim of victimization of sexual abuse, the court concluded that "I would expect that such an experience would make it less likely that as a 40-year-old man he would subject a child to the depravity that's involved in this case and to the similar depravity.  Certainly this experience, if true, cannot serve as an excuse for what the defendant did to the 9 year old victim in this case." App. 264-65.  After considering "the 3553(a) factors, the arguments of counsel, the Defendant's statement, the facts agreed to at the plea agreement and the pre-sentence report," the district court sentenced Curran to 360 months in prison on Count 1 and 240 months in prison on Counts 2 and 3, to be served consecutively to each other and to Count 1, a total sentence of 840 months.

Curran filed his Notice of Appeal with the Third Circuit on November 25, 2014 and the Court of Appeals entered their final judgment on February 1, 2016

affirming Curran's sentence and conviction. Therefore, the one year statute of limitations on the filing of a 2255 motion began running 90 days after the entry of the Court of Appeals judgment or May 1, 2016. Therefore, Curran's filing of this motion on April 21, 2017 was within the expiration of the statute of limitations of May 1, 2017.

## ARGUMENT

In *Strickland v. Washington,* 466 U.S. 668 (1984), the United States Supreme Court the Supreme Court reaffirmed that the Sixth Amendment guarantees a criminal defendant the effective assistance of counsel, stating that "an accused is entitled to be assisted by an attorney, whether retained or appointed, who plays the role necessary to ensure that the trial is fair." *Id*. at 685. In setting up the standard for addressing claims of ineffective assistance, the Court held that such a claim has two components – inadequate performance by counsel and resultant prejudice.

The first part of the test requires the claimant to show that counsel's performance was so deficient that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. *See id*. at 687. In assessing such a claim, a court's review of counsel's performance is highly deferential, and there is a strong presumption that counsel's actions fell within a "wide range of reasonable professional assistance." *Id*. at 689. In other words, an ineffective

assistance claim fails if, under the circumstances, counsel's actions "might be considered sound trial strategy." *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

Even if a claimant can demonstrate that counsel's performance was deficient under the standard discussed above, prejudice must then be identified. In doing so, it is not enough to show that the alleged errors had some conceivable effect on the outcome of a proceeding. Instead, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 684. A "reasonable probability" is one sufficient to undermine confidence in the outcome of the proceeding. *Id.* The government will address each prong of the *Strickland* test as it applies in this case in turn.

**1. Curran's claims fall far short of meeting the *Strickland* standard.**

Curran claims first that his sentence should be vacated or set aside because his counsel was ineffective. According to Curran, his defense counsel was ineffective for the following reasons:

- counsel did not permit him to testify long enough at his suppression hearing and Curran posits he had "not alot [sic] of questions to defend myself"

- counsel did not explain why a Superseding Indictment was necessary in his case, and

- counsel failed to procure video evidence from the storage facility location for use at the hearing on the motion to dismiss.

Lori Ulrich, Assistant Federal Public Defender, was the defendant's counsel throughout the pendency of this matter. Curran has utterly failed to demonstrate how Ms. Ulrich's actions were unreasonable or prejudicial under the circumstances of this case. Her strategy is deciding how to question Curran on the witness stand during a suppression hearing, when Curran was given ample opportunity on direct and cross examination to respond to many, many questions about the case certainly could not be characterized as error that had a reasonable probability of effecting the outcome of this proceeding. This proceeding was an evidentiary hearing before the Court, and following that the defendant pleaded guilty.

Curran simply cannot show there is a reasonable probability that if he provided additional testimony at the suppression hearing or if video evidence from the storage facility location as he has described it would have been admitted that either of those would have affected the outcome of the suppression hearing. Even assuming everything Curran states would have been shown on this alleged video, the question remains "so what?" None of that proposed evidence address the

11

ultimate issue that was in dispute, which is whether the evidence recovered should have been suppressed. If the contraband evidence found in the bag thrown over the fence is still lawfully discovered as determined previously by this Court and the Third Circuit Court of Appeals, then the United States continues to have the strong case it has always had.

Without such a showing, Curran cannot demonstrate any prejudice flowing from his counsel's alleged deficient representation at the hearing, and thus his ineffective assistance of counsel claim should be rejected.

**2. Curran challenges his consecutive sentences to Count 2 - Receipt of Child Pornography and Count 3 - Possession of Child Pornography, alleging these counts now violate the Double Jeopardy clause.**

Curran claims that defense counsel was ineffective because she failed to properly advise him regarding a possible double jeopardy claim Curran believes only now exists as to Counts 2 and Count 3, as a result of statements made at his sentencing hearing. In this case, in the Superseding Indictment, Count 2 charged Curran with the receipt and distribution of child pornography in violation of Title 18, United States Code, Section 2252(a)(2) and specifically references those images sent "by U.S. mail or computer". Count 3 charged Curran with the possession of child pornography in violation of Title 18, United States Code, Section 2252A(a)(5)(B) and specifically references those images "mailed, shipped

and transported in interstate and foreign commerce by any means, including by computer."

When Curran's electronic devices (1 laptop and 62 flash drives) were forensically examined, 3.9 million images were located.  *See* PSR ¶12.  The forensic examiner located more than 40,000 images of child pornography and over 100 video files, and when he reached those numbers they simply stopped counting.  *See id.*  Approximately 12 videos were of Curran sexually assaulting the 9 year old victim in this case.  *See* PSR ¶15.  Agents also found evidence of videos Curran ordered through the mail years ago, that Curran is now claiming were legal and "nudist" videos.  However, the majority of the contraband found on Curran's devices were images and videos that had been downloaded from the internet.

The examiner also concluded that his devices contained 28 series of child pornography images that portray known victims previously identified by the National Center for Missing and Exploited Children.  *See* PSR ¶24.  This evidence establishes there is no way Curran could have produced those images and must have received them at some point.  In addition, Curran admitted to receiving and possessing child pornography videos when interviewed by the probation officer in connection with this case.  *See* PSR ¶30.  Clearly, Curran received child pornography images and videos and separately possessed other child

pornography images and videos, such that there is no double jeopardy violation here. Different date ranges that do not overlap were alleged in the Superseding Indictment as well.

Nothing in defense counsel's performance can be construed as deficient or causing his to suffer any prejudice. Post-conviction displeasure with his sentence a year later does not give rise to ineffective assistance of counsel. A defendant cannot, as Curran attempts to do here, indicate his acquiescence with his plea agreement at the change of plea hearing, even at the sentencing hearing, and then one year later claim his attorney was ineffective because he is unhappy with the sentence imposed by the Court.

## CONCLUSION

Curran's claims of ineffective assistance of counsel are meritless. Curran has not demonstrated that he was prejudiced or that the outcome would have been different. As no Sixth Amendment violation has occurred, there is no basis to vacate, remand or set aside his sentence.

**WHEREFORE,** the United States respectfully requests this Honorable Court enter an Order denying Curran's motion to vacate or set aside or correct his sentence.

Respectfully submitted,

BRUCE D. BRANDLER
United States Attorney

/s/ Meredith A. Taylor
MEREDITH A. TAYLOR
Assistant U.S. Attorney
PA 205058
Meredith.Taylor@usdoj.gov
228 Walnut Street, Suite 220
P.O. Box 11754
Harrisburg, PA 17108
Phone: (717) 221-4482
Fax: (717) 221-4493

# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | No. 1: 13-CR-259 |
| v. | : | (Judge William W. Caldwell) |
| DANIEL THOMAS CURRAN JR. | : | (FILED ELECTRONICALLY) |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion to be competent to serve papers.

That this 11th day of August, 2017, she served a copy of the attached

**Government's Brief Opposing Defendant's Motion Under §2255 to Vacate, Set Aside or Correct Sentence**

by electronic means and/or first-class United States mail by sending a copy to each of the addresses stated below:

**Addressees:**
Daniel Thomas Curran Jr.
No. 7185-067
USP Tucson
PO Box 24550
Tucson, AZ 85734-4550

Lori Ulrich, Esquire
Assistant Federal Public Defender
100 Chestnut Street, Suite 306
Harrisburg, PA 17101

Crystal Bard
United States Probation Office
228 Walnut Street, Room 720
Harrisburg, PA 17108

                                          /s/ Meredith A. Taylor
                                          Assistant U.S. Attorney