UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA    :
                             :
   v.                        :     CASE NO. 1:13-CR-259
                             :
DANIEL THOMAS CURRAN,        :
       Defendant             :

*M E M O R A N D U M*

*I.     Introduction*

Before the court is Defendant Daniel Thomas Curran's motion (Doc. 127) to vacate, set aside, or correct sentence under 28 U.S.C. § 2255. After careful review, the court will deny Defendant's motion.[1]

*II.    Background*

By indictment dated November 20, 2013, Defendant was charged with production of child pornography, in violation of 18 U.S.C. § 2251(a) (Count I), and possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B) (Count II). (Doc. 16). Defendant pleaded not guilty. (Doc. 23).

On March 14, 2014, Defendant filed a pretrial motion to suppress evidence, seeking to exclude inculpatory evidence found in three bags that belonged to him, as well as evidence found in his storage unit that he claimed was "fruit of the poisonous tree." (Doc. 40; Doc. 61 at 3-4). After an evidentiary hearing, this court denied Defendant's motion to suppress in a memorandum opinion. (Doc. 68).

---

[1] Defendant also filed an affidavit (Doc. 128) in support of a motion for leave to proceed in forma pauperis (IFP), although he did not file an actual IFP motion. Because there is no filing fee associated with a § 2255 motion, however, the court will disregard this affidavit.

On September 10, 2014, the Government filed a superseding indictment. (Doc. 74). The superseding indictment charged Defendant with production of child pornography (Count I) and possession of child pornography (now Count III), and added a charge of receipt of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(2) (Count II). (Doc. 74). The approximate offense dates provided in the superseding indictment for Count II (receipt) were "June 4, 2007 through April 1, 2011," and the approximate offense dates for Count III (possession) were "August 1, 2013 through September 24, 2013." (Id. at 3-5). Defendant initially pleaded not guilty to the superseding indictment. (Doc. 83).

In November 2014, Defendant signed a written plea agreement with the Government, (Doc. 89), and, pursuant to Federal Rule of Criminal Procedure 11(a)(2), entered a conditional plea of guilty to all three charges in the superseding indictment, (Doc. 94). This guilty plea was conditioned on Defendant's ability to appeal the denial of his motion to suppress.

On June 4, 2015, this court sentenced Defendant to 840 months' imprisonment, which consisted of 360 months on Count I and 240 months on each of Counts II and III, to be served consecutive with each other and with Count I. (Doc. 117 at 2). Defendant appealed the denial of his suppression motion as well as the substantive reasonableness of his sentence. United States v. Curran, 638 F. App'x 149 (3d Cir. 2016). The Third Circuit affirmed on both issues, id. at 150, and the Supreme Court of the United States denied certiorari on October 3, 2016, Curran v. United States, 137 S. Ct. 180 (2016) (mem.).

On April 21, 2017, Defendant timely filed the instant motion under 28 U.S.C. § 2255. (Doc. 127). He raises four grounds for relief: (1) ineffective assistance of

counsel; (2) double jeopardy regarding Count II (receipt of child pornography) and Count III (possession of child pornography); (3) a violation of his Fourth Amendment rights related to the search and seizure of his bags; and (4) unlawful seizure of his person in violation of the Fourth Amendment.  The Government filed a response to Defendant's claims, (Doc. 131), and Defendant filed a reply shortly thereafter, (Doc. 134).  The motion is now ripe for disposition.

*III.        Discussion*

In his § 2255 motion, Defendant raises four claims for relief.  The court will address each claim, but in a different order than presented in Defendant's motion.

A. <u>Fourth Amendment Claim Regarding Search of Bags</u>

In claim three of his § 2255 motion, Defendant once again argues that his bags were unlawfully searched and seized, and that their contents should have been suppressed as a consequence.  The problem for Defendant is that this claim has already been fully litigated by this court and by the Third Circuit.  <u>See generally</u> (Doc. 68); <u>United States v. Curran</u>, 638 F. App'x 149 (3d Cir. 2016).  Accordingly, it will not be relitigated at the § 2255 motion stage.  <u>See</u> <u>United States v. Travillion</u>, 759 F.3d 281, 288 (3d Cir. 2014) (citing <u>United States v. DeRewal</u>, 10 F.3d 100, 105 n.4 (3d Cir. 1993)) ("[I]ssues resolved in a prior direct appeal will not be reviewed again by way of a § 2255 motion."). Consequently, relief on this claim will be summarily denied.

B. <u>Unlawful Seizure of Defendant at the Storage Facility</u>

Defendant labels his fourth claim as "Over Using Authority."  (Doc. 127 at 8). He asserts that police officers "man handled" the storage operator to open the gate to the storage units, and handcuffed Defendant behind the gate without an arrest warrant.  (<u>Id.</u>)

3

From his motion and reply brief, it appears that Defendant is raising a Fourth Amendment claim, alleging that the officers wrongfully arrested him without a warrant.

This claim falters for a multitude of reasons. First and foremost, Defendant failed to raise this claim in his initial criminal proceedings in this court or on direct appeal, and has provided no reason why he could not have raised the claim during those proceedings. Consequently, he is precluded from raising it for the first time in his § 2255 motion. Travillion, 759 F.3d at 288 n.11 (citing DeRewal, 10 F.3d at 105 n.4) ("[I]ssues which should have been raised on direct appeal may not be raised with a § 2255 motion."); Ray v. United States, 721 F.3d 758, 761 (6th Cir. 2013) ("[A] § 2255 motion is not a substitute for a direct appeal. Accordingly, claims that could have been raised on direct appeal, but were not, will not be entertained via a motion under § 2255 unless the [movant] shows: (1) cause and actual prejudice to excuse his failure to raise the claims previously; or (2) that he is actually innocent of the crime." (citations and internal quotation marks omitted)).[2]

Second, even if Defendant had not defaulted on this claim, it is nonetheless meritless. The record is clear that Defendant was lawfully detained for investigative purposes, and shortly thereafter was lawfully arrested.

As opposed to requiring probable cause for an arrest, a "brief investigative detention is permissible if 'the police officer [can] point to specific and articulable facts,

---

[2] Some circuits have expressly barred free-standing Fourth Amendment claims from being raised in § 2255 motions when there was an opportunity for "full and fair litigation" of the claim at trial or on direct appeal. See, e.g., Ray, 721 F.3d at 762; Brock v. United States, 573 F.3d 497, 500 (7th Cir. 2009); United States v. Cook, 997 F.2d 1312, 1317 (10th Cir. 1993); United States v. Hearst, 638 F.2d 1190, 1196 (9th Cir. 1980). Although the Third Circuit has not yet directly addressed this issue, it has at least raised the question. See United States v. Britton, C.A. No. 17-1389, 2017 WL 3630168, at *1 (3d Cir. May 16, 2017) (nonprecedential) (citing Stone v. Powell, 428 U.S. 465, 481-82 (1976) and Ray, 721 F.3d at 761).

which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion,'" i.e., "raise a suspicion that the particular individual being stopped is engaged in wrongdoing." United States v. Navedo, 694 F.3d 463, 467-68 (3d Cir. 2012) (alterations in original) (quoting Terry v. Ohio, 392 U.S. 1, 30 (1968) and United States v. Cortez, 449 U.S. 411, 418 (1981)). "In evaluating whether reasonable suspicion existed, a court 'must consider the totality of the circumstances, including the police officer's knowledge, experience, and common sense judgments about human behavior.'" Id. at 468 (quoting United States v. Robertson, 305 F.3d 164, 167 (3d Cir. 2002)). "Reasonable suspicion . . . unequivocally demands that 'the detaining officer[ ] must have a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" United States v. Brown, 448 F.3d 239, 246 (3d Cir. 2006) (citation omitted).

    Here, the victim's father had reported to police that Defendant may have had illegal physical contact with his nine-year-old son. The very next day, another person reported that Defendant had shown him pornographic pictures on his cellphone, had claimed to have had sexual relations with two children, and had admitted that he had almost been caught by their father. Later, the victim's father also reported that he had discovered multiple items missing from his home after Defendant had moved out, and indicated that he believed Defendant had a storage unit somewhere.

    The police accordingly investigated these accusations. When speaking with police during the investigation, Defendant told police officers that he did not own a storage unit. Shortly thereafter, the police contacted a local storage facility and learned that Defendant did have a storage unit, and that he was currently at the unit. Upon arriving at the storage facility, the police found Defendant walking toward the exit and looking over

his shoulder toward the back of the storage facility. Defendant was then detained for further investigation.

Under these circumstances, it is unequivocally clear that the police officers had reasonable suspicion that Defendant was, at the very least, implicated in the theft of personal property from the victim's father. Taken together, the father's report of stolen items shortly after Defendant moved out of the house, Defendant's dishonesty to the police about owning a storage unit, and Defendant's presence at the storage facility undoubtedly provided a particularized and objective basis for suspecting Defendant of theft, authorizing police to detain him at that time.

Moreover, after Defendant was detained, the police observed items in plain view spilling from one of the bags that matched the father's description of items stolen from his house. A cell phone belonging to the victim's father was also found after a cursory search of one of the other bags, a search that was later confirmed to be legal. Defendant was then placed under arrest.

Contrary to Defendant's contentions, no arrest warrant was needed, because the police officers had probable cause to believe that Defendant had stolen property from the victim's father. "[P]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." Goodwin v. Conway, 836 F.3d 321, 327 (3d Cir. 2016) (quoting Orsatti v. N.J. State Police, 71 F.3d 480, 483 (3d Cir. 1995)). As such, Defendant's arrest was not unlawful either.

6

Finally, even if Defendant's warrantless arrest had been in violation of the Fourth Amendment, this alone would not have resulted in the suppression of evidence. As the Third Circuit has explained, "a single Fourth Amendment violation does not taint an entire case, but only the evidence uncovered as a result of that violation." United States v. Mosley, 454 F.3d 249, 254 (3d Cir. 2006). In other words, there must be a causal connection between the illegal conduct and the evidence sought to be suppressed. See Utah v. Strieff, 136 S. Ct. 2056, 2061 (2016) ("Evidence is admissible when the connection between unconstitutional police conduct and the evidence is remote or has been interrupted by some intervening circumstance, so that the interest protected by the constitutional guarantee that has been violated would not be served by suppression of the evidence obtained." (citation and internal quotation marks omitted)).

Here, neither this court nor the Third Circuit excused the warrantless search of Defendant's bags under the search-incident-to-arrest exception to the warrant requirement. Rather, both courts found that other exceptions to the warrant requirement applied, making the search and seizure lawful. In particular, the Third Circuit found that the bags had been abandoned, and thus no search warrant was required. Defendant has pointed to no fact or law that would connect the allegedly illegal arrest to the discovery of evidence. As such, even if Defendant had been unlawfully detained or arrested, no suppression of evidence would follow, because the arrest itself did not uncover any evidence. Mosley, 454 F.3d at 254.

For all of the foregoing reasons, Defendant's claim alleging a Fourth Amendment violation for unlawful arrest will be denied.

C. <u>Double Jeopardy for Receipt and Possession of Child Pornography</u>

In Defendant's second claim, he asserts that the Double Jeopardy Clause of the Fifth Amendment was violated when he was separately convicted and sentenced for both receipt of child pornography (Count II) and possession of child pornography (Count III). He argues that these two counts were based on the same materials or conduct, and therefore he was unconstitutionally punished with two 20-year consecutive prison terms for the same illegal behavior.

The Government responds that Defendant's guilty plea to both receipt and possession of child pornography did not contravene the Fifth Amendment's guarantee against double jeopardy. This is so, the Government maintains, because Defendant "received child pornography images and videos and separately possessed other child pornography images and videos," and because the dates of these two offenses in the superseding indictment are different. (Doc. 131 at 13-14).

The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution protects against, among other things, "multiple punishments for the same offense." <u>United States v. Finley</u>, 726 F.3d 483, 495 (3d Cir. 2013) (quoting <u>Ohio v. Johnson</u>, 467 U.S. 493, 498 (1984)). But "[i]n order for multiple punishments to constitute a double jeopardy violation, the multiple charged offenses must be the same in law *and* in fact. <u>Id.</u> (citing <u>United States v. Felton</u>, 753 F.2d 276, 278 (3d Cir. 1985)). The Third Circuit has explicitly held that "possession of child pornography in violation of § 2252A(a)(5)(B) is a lesser-included offense of receipt of child pornography in violation of § 2252A(a)(2)." <u>United States v. Miller</u>, 527 F.3d 54, 72 (3d Cir. 2008). Nevertheless, in

order for separate convictions under each subsection to offend the Double Jeopardy Clause, the convictions must be for the "same offense" or "same acts." Id. at 71-72.

Under the facts of this case, Defendant's separate convictions and punishments for receipt of child pornography and possession of child pornography do not offend the Double Jeopardy Clause. In Count I of the superseding indictment, Defendant was charged with production of child pornography from approximately August 1, 2013, to September 24, 2013, related to the video recordings he made of his molestation of C.S.— the nine-year-old victim. (Doc. 74 at 1-2). Count II of the superseding indictment charged Defendant with receipt of child pornography, by U.S. mail or computer, from June 4, 2007, to April 1, 2011. (Id. at 3). Count III of the superseding indictment charged Defendant with possession of child pornography from August 1, 2013, through September 24, 2013. (Id. at 4).

Defendant's laptop and sixty-two flash drives contained some 3.9 million files. (PSR ¶ 12). FBI forensic analysists identified more than 40,000 images and over 100 videos containing child pornography, and eventually stopped counting due to the massive number of files. (Id.) Approximately twelve of the videos discovered on Defendant's devices were of Defendant sexually assaulting C.S., with "created dates" ranging from August 2013 to September 2013. (Id. ¶¶ 14, 15).

Had Defendant been charged with and convicted of receipt and possession of child pornography for the same pornographic images downloaded from the internet onto one particular device, the Double Jeopardy Clause might be implicated. But that is not the case. Defendant's separate indictment, convictions, and sentences for receipt and possession were based on distinct, illegal conduct, and thus were constitutional.

9

Although "possession of child pornography in violation of § 2252A(a)(5)(B) is a lesser-included offense of receipt of child pornography in violation of § 2252A(a)(2)," Miller, 527 F.3d at 72, possession of child pornography is not a lesser-included offense of production of child pornography under the Supreme Court's controlling Blockburger test. Under Blockburger, "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." Blockburger v. United States, 284 U.S. 299, 304 (1932) (citation omitted). In other words, if each offense contains an element that the other does not, it is not the "same offense" and a conviction for both does not violate the Double Jeopardy Clause, even if based on the same conduct or transaction. Miller, 527 F.3d at 71 (citing United States v. Dixon, 509 U.S. 688, 696 (1993)).

The crime of production of child pornography under 18 U.S.C. § 2251(a) requires, as one of its elements, employing, using, persuading, inducing, enticing, or coercing a minor to engage in—or having a minor assist any other person to engage in—any sexually explicit conduct for the purpose of producing any visual depiction of such conduct. 18 U.S.C. § 2251(a). The crime of possession of child pornography under 18 U.S.C. § 2252A(a)(5)(B) requires, as one of its elements, knowingly possessing, or knowingly accessing with intent to view, any material that contains an image of child pornography. 18 U.S.C. § 2252A(a)(5)(B). Accordingly, possession of child pornography is not a lesser-included offense of, or the same offense as, production of child pornography, because each crime contains at least one element that is not required by the

other.  Indeed, someone who entices or coerces a minor into producing a visual depiction of sexually explicit conduct will not necessarily possess that visual depiction.

Therefore, even if the same transaction underlies both offenses, as it does here, there is no double jeopardy violation for separately charging, convicting, and sentencing a defendant for both production of child pornography and possession of child pornography.  Defendant's production of videos of his molestation of C.S. and Defendant's possession of those videos are separate crimes with different elements for which the Government was constitutionally permitted to prosecute Defendant.

It follows, then, that Defendant's separate indictment, conviction, and punishment for receipt of child pornography is not based on the same conduct or facts as his conviction and sentence for possession of child pornography.  Defendant had in excess of 40,000 images and videos of child pornography on his laptop and flash drives, the vast majority of which did not involve C.S., and which—as noted in his superseding indictment—were received over several years preceding his molestation of C.S. in 2013.  As such, there is no double jeopardy violation for Defendant's separate convictions and sentences for receipt and possession under 18 U.S.C. § 2252A(a), because those charges were based on distinct, illegal conduct.[3]  Consequently, relief on Defendant's second claim will be denied.

---

[3] The court further notes that Defendant's conduct of downloading thousands of images of child pornography and, presumably, transferring and storing those images on separate flash-drive memory devices would also support his dual convictions for receipt and possession of child pornography, even if the same images were involved in both offenses.  See United States v. Overton, 573 F.3d 679, 698 (9th Cir. 2009) ("[T]he transfer and storage of previously-downloaded internet images—to a memory card or diskette, for example—describes conduct separate from the act of downloading [i.e., receiving] pornography and may thus provide sufficient independent basis for a possession conviction.").

D. Ineffective Assistance of Counsel

Defendant's final claim (the first claim of his § 2255 motion), is that his court-appointed attorney's performance was constitutionally deficient. He lists a variety of reasons for why this is so, including that (1) he only had a "minor time on the stand" at the suppression hearing with not enough questions asked to properly defend himself, (2) his attorney did not explain why a superseding indictment was necessary in his case, and (3) his attorney failed to obtain video evidence from the storage facility that Defendant believes would have supported his suppression arguments. (Doc. 127 at 4).

Claims of ineffective assistance of counsel are governed by Strickland v. Washington, 466 U.S. 668 (1984). The burden is on the defendant to prove such a claim. Strickland, 466 U.S. at 687.

Strickland sets forth a two-prong test to determine claims of ineffective assistance of counsel. First, counsel's performance must be deficient. Jacobs v. Horn, 395 F.3d 92, 102 (3d Cir. 2005) (citing Strickland, 466 U.S. at 687). "Performance is deficient if counsel's efforts 'fell below an objective standard of reasonableness' under 'prevailing professional norms.'" Shotts v. Wetzel, 724 F.3d 364, 375 (3d Cir. 2013) (quoting Strickland, 466 U.S. at 688).

Second, counsel's deficient performance must have prejudiced the defendant. Jacobs, 395 F.3d at 105 (citing Strickland, 466 U.S. at 692). "To demonstrate prejudice, 'a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Shotts, 724 F.3d at 375 (quoting Strickland, 466 U.S. at 694).

12

Regarding Defendant's first ineffectiveness claim concerning his time on the witness stand at the suppression hearing, the court agrees with the Government that Defendant "has utterly failed to demonstrate how [his attorney]'s actions were unreasonable or prejudicial under the circumstances of his case." (Doc. 131 at 11). Defendant has provided no explanation or evidence regarding how his attorney's performance fell below an objective standard of reasonableness insofar as his suppression testimony is concerned. As the Third Circuit has explained, "vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the District Court." United States v. Thomas, 221 F.3d 430, 437 (3d Cir. 2000) (citation omitted); see also Zettlemoyer v. Fulcomer, 923 F.2d 284, 298 (3d Cir. 1991) (explaining that a defendant asserting ineffective assistance of counsel "cannot meet his burden to show that counsel made errors so serious that [the] representation fell below an objective standard of reasonableness based on vague and conclusory allegations that some unspecified and speculative testimony might have established his defense. Rather, he must set forth facts to support his contention."). As such, this ineffectiveness claim cannot provide Defendant a basis for relief.

Defendant's second ineffectiveness claim suffers from the same infirmity as his first. He asserts that his attorney was constitutionally ineffective for failing to explain to him why a superseding indictment was necessary in his case. Defendant leaves this claim completely undeveloped, and fails to demonstrate why this alleged action was an unprofessional error or how it prejudiced him. Accordingly, it can be disposed of without further investigation. Thompson, 221 F.3d at 437; Zettlemoyer, 923 F.2d at 298.

In his third ineffectiveness claim, Defendant alleges that his attorney was deficient for failing to obtain and review video footage from the storage facility where he was arrested. He argues that this footage would have proven that Detective Michael Hine—a government witness at the suppression hearing and one of the arresting officers—was not credible, and that Defendant was actually detained on "private property," which Defendant maintains would have been unlawful under Pennsylvania law. (Doc. 134 at 7). According to Defendant, had Detective Hines' credibility been properly challenged, this court would not have accepted Detective Hines' "plain view" testimony concerning what articles he saw spilling from one of Defendant's bags, and therefore would have suppressed the evidence in this case. (Id. at 7-8).

The problem for Defendant is that even assuming such an action fell below an objective standard of reasonableness and the video shows what Defendant claims, as the Government bluntly puts it, "so what?" (Doc. 131 at 11). First, Pennsylvania law and rules of evidence have no bearing on Defendant's federal criminal prosecution and the suppression of evidence therein. See United States v. Rickus, 737 F.2d 360, 363 (3d Cir. 1984) (citation omitted) ("It is a general rule that federal district courts will decide evidence questions in federal criminal cases on the basis of federal, rather than state, law."). Second, even if Defendant is correct regarding what the video shows and that it would establish that Detective Hine was not credible regarding what items were visible in plain view, this still would not affect the outcome of Defendant's case. As explained in more detail below, the Third Circuit held that Defendant had abandoned his bags and thus any search or seizure of them after they were abandoned was permissible. It follows then, that even if Defendant's claims about the video footage and the credibility of Detective Hines'

testimony are accurate, no evidence would have been suppressed as a result. Therefore, Defendant cannot show prejudice under Strickland, and he cannot prevail on his third ineffectiveness claim.

Finally, in his reply brief, Defendant also appears to raise several related ineffective-assistance claims regarding other alleged shortcomings of his attorney at the suppression hearing. Defendant again attacks Detective Hines' credibility and questions whether his bags were actually abandoned, and claims that his attorney was ineffective for failing to properly litigate these issues at the hearing.

The difficulty for Defendant is that he simply cannot demonstrate prejudice on the grounds he asserts. Even assuming the accuracy of his contentions regarding Detective Hines' credibility and Defendant's subjective desire to keep people from disturbing his bags, nothing specifically raised in his ineffectiveness claims would change the ultimate outcome of the suppression challenge.

The Third Circuit found that Defendant, by throwing the bags over the fence into a public area, walking away, and making no attempt to protect the bags or their contents from inspection, clearly and unequivocally demonstrated an abandonment of any reasonable expectation of privacy in the bags, regardless of Defendant's subjective intent to retrieve them or to protect them from passersby. United States v. Curran, 638 F. App'x 149, 153-54 (3d Cir. 2016) ("When [Defendant] threw the bags over the fence into a public area, where they could be accessed by any passerby, it was no longer reasonable for him to expect those bags to remain private after he walked away."). Defendant's current claims challenge none of these core facts. Therefore, even if his assertions are correct, the Third Circuit still would have upheld the denial of his suppression motion under the

theory of abandonment. Consequently, no prejudice can be shown, and Defendant's final ineffectiveness claims raised in his reply brief ultimately fail.

*IV.* *Conclusion*

For the foregoing reasons, Defendant's motion pursuant to 28 U.S.C. § 2255 will be denied. A certificate of appealability will also be denied. However, Defendant is advised that he has the right to appeal this decision, see 28 U.S.C. § 2253(a), and that this court's denial of a certificate of appealability does not prevent him from doing so, as long as he also seeks a certificate of appealability from the court of appeals. See FED. R. APP. P. 22. An appropriate order will follow.

                                         /s/ William W. Caldwell
                                         William W. Caldwell
                                         United States District Judge